John L. Flynn, J.
The plaintiff, a former partner of defendant law firm, seeks an accounting and other relief. The controversy arises over the construction of the partnership agreement dated December 14, 1953 and executed by the parties. I am mainly concerned with the intent and understanding of the parties with relation to the rights of a withdrawing partner within the purview and interpretation of the agreement.
The clauses of the agreement pertaining to the withdrawal of a partner are as follows:
“ARTICLE V
“ WITHDRAWAL
“ Section 1. Any Partner may withdraw from the Partnership at the end of any calendar month upon giving not less than ninety (90) days’ prior written notice by mail of his intention to withdraw addressed to each office of the firm. In the event the Executive Committee accepts such withdrawal prior to the ninety (90) day limitations the withdrawal shall became effective the date of such acceptance.
“ Section 2. In the event that any Partner withdraws he shall be entitled to payments as follows:
“ (a) The return of his capital account (including extra capital, if any) with accrued interest after debiting loss, if any, as provided for in subsection (b) of this Section, in four (4) equal installments, the first shall be paid within six (6) months from the effective date of his withdrawal and the other installments shall be paid in six (6) month intervals thereafter; provided, however, the firm shall have the option to pay the withdrawing Partner his capital account in full at any time after the effective date of such withdrawal. In case of dissolution any amounts due a withdrawing Partner for net fees or capital shall be paid on dissolution.
*799 “ (b) His share of the Net Profits as determined under the provisions of Article IY Section 2(b) as his full participating interest in the net fees of the firm; provided, however, the firm shall have the option to delay such payment, in whole or in part, for one year from the effective date of such withdrawal. In the event the estimate results in a loss the withdrawing Partner’s capital account shall be debited by an amount equal to the withdrawing Partner’s share of such loss.
“ARTICLE IY
‘ ‘ PARTICIPATION
* # *
“ Section 2(a)
‘1 In the event of death of a Partner his estate shall receive his proportionate share of net fees in all matters pending at the time of death, whether billed or unbilled. Such payment of net fees shall be made as if the Partner had remained alive; provided, however, the individual Partners hereby specifically authorize and empower their respective distributees, executors or administrator to make an agreement with the surviving Partners for settlement at any time of all claims the estate of the deceased Partner has against the firm.
“ (b) In the event of the withdrawal of a Partner from the firm an estimate shall be promptly made of the net profits of the firm as of the date of such withdrawal, such estimate shall be made by charles b. hill and in the event that he does not act, then by the three senior Active Partners and either of such estimates shall be deemed the actual net profit of the firm as of the date of such withdrawal; the firm shall have the option to delay payment, in whole or in part, of any net profits due the withdrawing Partner for one year from the effective date of such withdrawal.
“ARTICLE III
‘‘ PROFITS and losses
“ Section 1. Gross fees shall not include out-of-pocket expenses and disbursements. Out-of-pocket expenses and disbursements, including stenography shall be billed as separate items. The net fees in each year shall be the balance remaining after all expenses incurred by the offices of the firm are subiracted from the gross feps earned by the offices of the firm for that year,
*800 “ Section 2. At the end of each year ten percent (10%) of the net fees shall be allocated to the capital fund and the remainder shall be known as the net profits for the year. When allocation to the capital fund is made from net fees the capital account of each Partner shall be credited with his share of such contribution in accordance with the Participation Schedule.”
The plaintiff contends that, as a withdrawing partner, under the terms of the agreement he is entitled not only to a share of the cash net profits shown on the books on the date of withdrawal but also to a proportionate share of all fees earned but unpaid, whether billed or unbilled, on the date of his withdrawal. The defendants assert that a proper interpretation of the agreement is that a withdrawing partner is entitled to the return of his capital and to the cash net profits only, shown on the date of his withdrawal.
Whatever ambiguity might exist in the expressed agreement between these attorneys — and I can discern but little — was wholly removed at the trial. Among other evidence, the author of the document, Cherbonnier, testified fully concerning his understanding of the agreement and throughout his examination maintained that all parties recognized that a withdrawing partner was to have his share of fees earned but unpaid. All of the objective evidence submitted at the trial, including but not limited to Logan’s letter of October 7, 1951, Betts’ letter of March, 1952, and the severance agreements with Cherbonnier and Dickerson, compel me to interpret the agreements in accordance with the plaintiff’s contention. I cannot transcend from the expressed intent of the parties to a fanciful flight in the field of semantics nor abuse common sense and logic to conclude otherwise. Accordingly, the plaintiff is entitled to prevail on his claims to an accounting and the court directs a reference with respect to. the first, third and fourth causes of action. The application for the appointment of a receiver is denied and the second cause of action is stricken.
Settle interlocutory judgment providing for a referee to take the account and report.
The foregoing is the decision of the court in accordance with section 440 of the Civil Practice Act.